Freedman, J. (dissenting).
I respectfully dissent and would affirm the decision of the motion court because the Salvation Army has paid JFK the full amount that it is entitled to receive under the parties’ lease agreement.
This lawsuit arises from the Salvation Army’s operation, on behalf of the New York City Department of Homeless Services (DHS) and the City of New York, of a shelter for homeless families at the Carlton House Hotel in Queens, New York, between 2002 and 2005.
The operation was governed by a lease for the hotel between the Salvation Army and J.F.K. Acquisition and a services agree *279 ment between the Salvation Army and DHS, under which the Salvation Army operated the shelter for DHS. Acknowledging the Salvation Army’s role as a conduit for DHS, plaintiffs aver that they and DHS “contemplated a ‘pass through’ agreement in which the City would assume responsibility for costs to The Salvation Army under the [l]ease through the [s]ervices Agreement.” Plaintiffs acknowledge that they directly negotiated the services agreement with DHS without any participation by the Salvation Army.
In relevant part, the two contracts provided as follows: in paragraph 31 of the lease, which is titled “Services Agreement,” J.F.K. Acquisition acknowledged that the Salvation Army had entered into the lease solely to fulfill its obligations to DHS under the services agreement. Paragraph 31 also provided that, save for an inapplicable exception, the extent of the Salvation Army’s liability to J.F.K. Acquisition for, among other things, “damages for breaches of any [lease] covenant,” was limited to the amounts that the Salvation Army received from DHS pursuant to the services agreement or otherwise in connection with the hotel’s use. The Salvation Army’s other assets were “expressly [excluded].” If DHS failed to pay amounts that it owed the Salvation Army, paragraph 31 continued, the Salvation Army was obligated to “use commercially reasonable efforts to enforce its rights against [DHS] under the [s]ervices Agreement or otherwise.”
Finally, another lease provision stated that the Salvation Army could terminate the lease if DHS terminated the services agreement, provided that the Salvation Army paid J.F.K. Acquisition a variable fee based on the date of termination and restored the hotel to its pre-lease condition. While the lease contained a covenant by the Salvation Army to restore the hotel to its pre-lease condition, paragraph 31 of the lease limits the Salvation Army’s liability to monies received from DHS.
The relevant services agreement provisions concerned DHS’s payment obligations to the Salvation Army. While the services agreement was in effect, DHS only was required to pay the Salvation Army the monthly fixed amount that J.F.K. Acquisition was due under the lease for rent, for taxes on and insurance for the hotel, and for the performance of J.F.K. Acquisition’s maintenance obligations. The services agreement permitted DHS to terminate it without cause if termination was deemed to be in the City’s best interest, and in that event the only payment DHS was required to make was the lease termination fee.
*280 In August 2005, DHS terminated the services agreement, causing the Salvation Army to terminate the lease. DHS paid the Salvation Army $10 million, which was the specified termination fee under the lease, and the Salvation Army paid that amount to J.F.K. Acquisition.
Plaintiffs base their breach of contract claim against the Salvation Army on the factual allegation that the Salvation Army left the hotel in worse condition than it found the property when it took possession. Accordingly, plaintiffs argue, the Salvation Army is liable for breaching its covenant in the lease to restore the hotel to its pre-lease condition. Plaintiffs also allege that the Salvation Army never tried to obtain the funds needed to restore the hotel from DHS and thereby breached its covenant to use “commercially reasonable efforts to enforce its rights against [DHS].”
The claim was properly dismissed because plaintiffs do not allege any actionable breach. When read together, the limitations on both the Salvation Army’s liability to J.F.K. Acquisition pursuant to the lease and DHS’s and the City’s obligations under the services agreement preclude the cause of action. Even if we were to assume the truth of the allegation that conditions at the hotel deteriorated while the Salvation Army was in possession, and that failure to restore breached a lease covenant to restore the hotel, plaintiffs could not recover more for damages than the $10 million termination fee plaintiffs had already received because of the explicit limitation on damages contained in the lease.
Moreover, the Salvation Army cannot be held liable for not trying to obtain the cost of restoring the hotel from DHS. While the lease may have required the Salvation Army to use “commercially reasonable efforts to enforce its rights against [DHS] under the [s]ervices [a]greement or otherwise,” that provision does not apply here because the Salvation Army did not have any right to recover posttermination restoration costs from DHS. The services agreement, which plaintiffs themselves negotiated directly with DHS, explicitly limited DHS’s payment obligations to the $10 million fee, and plaintiffs do not identify any other source of a right to recover from DHS. The majority’s statement that the City was “obligated” to pay for the hotel restoration “per the terms of the services agreement” is factually incorrect as there is no such provision in that contract.
In contending that our reading of the lease “would render meaningless paragraph 31’s requirement that the Salvation *281 Army ‘use commercially reasonable efforts’ to ensure payment,” the majority overlooks the plain language of the contracts. Under the lease, the Salvation Army only had to seek recovery from DHS if it had any right to recovery. If, for example, DHS had failed to pay the Salvation Army amounts due under the services agreement like the $10 million termination fee or the pre-termination rent, the Salvation Army would have been obligated to use commercially reasonable efforts to enforce its right against DHS to receive those payments.
Finally, I believe the cause of action alleging that the Salvation Army breached its implied covenant of good faith and fair dealing by failing to enforce its rights against DHS was properly dismissed because the implied obligation that plaintiffs allege conflicts with the explicit terms of the contracts (see Murphy v American Home Prods. Corp., 58 NY2d 293, 304 [1983]).
Saxe, J.P., and Catterson, J., concur with Manzanet-Daniels, J.; Friedman and Freedman, JJ., dissent in a separate opinion by Freedman, J.
Judgment, Supreme Court, New York County, entered November 5, 2010, reversed, on the law, without costs, the judgment vacated, the third cause of action for breach of contract reinstated, and the matter remanded for further proceedings.